# 22-2537-cv(L)

## 22-2685-cv(CON), 22-2701-cv(CON)

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT

——— ≫ ≪ ———

GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO INDEMNITY COMPANY,
GEICO GENERAL INSURANCE COMPANY, GEICO CASUALTY COMPANY,

*Plaintiffs-Appellees,*

*v.*

IGOR MAYZENBERG, MINGMEN ACUPUNCTURE, P.C.,
SANLI ACUPUNCTURE, P.C., LAOGONG ACUPUNCTURE, P.C.,
TAMILLA DOVMAN, AKA TAMILLA KHANUKAYEV, IGOR DOVMAN,

*Defendants-Appellants,*

*and*

JOHN DOE,

*Defendant.*

——————

*On Appeal from the United States District Court
for the Eastern District of New York*

## REPLY BRIEF FOR DEFENDANTS-APPELLANTS
## IGOR MAYZENBERG, MINGMEN ACUPUNCTURE, P.C.,
## SANLI ACUPUNCTURE, P.C., AND
## LAOGONG ACUPUNCTURE, P.C.

SCHWARTZ, CONROY & HACK, PC
*Attorneys for Defendants-Appellants*
  *Igor Mayzenberg, Mingmen Acupuncture, P.C.,*
  *Sanli Acupuncture, P.C.,*
  *and Laogong Acupuncture, P.C.*
666 Old Country Road, 9th Floor
Garden City, New York 11530
516-745-1122

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**............................................................................ii

**INTRODUCTION**.................................................................................. 1

**FACTS LARGELY UNDISPUTED**............................................. 5

**ARGUMENT**...................................................................... 10

   A. Mayzenberg Defendants Should Have Been Granted Summary
      Judgment.............................................................. 10

     1.   Kickbacks Should Not Be a Basis for Ineligibility..................... 10

     2.   There is No Evidence of Any Kickbacks In Any Event.............. 14

     3.   Non-parties' Invocation of the 5th Amendment Should
        Not Be Used to Draw a Negative Inference Against
        Defendants……………………………………………………18

     4.   There Was No Improper Protocol or Fraudulent Treatment........20

   B. GEICO's Claims Are Unsupportable Without The Kickbacks
     or Improper Protocol...................................................21

     (1)  Civil Rico [1962 (c) &(d)]........................................... 21

     (2)  Common Law Fraud.......................................................22

     (3)  Unjust Enrichment.........................................................23

**CONCLUSION**..................................................................25

**CERTIFICATE OF COMPLIANCE**…………………..……………..   26

**CERTIFICATE OF SERVICE**……………………………………………27

i

# TABLE OF AUTHORITIES

<u>Cases:</u>

*Avirgan v. Hull*,
932 F.2d 1572, 1580 (11th Cir. 1991).....………………………………………… 19

*Boyle v. United States*,
556 U.S. 938, 946, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009)………………. 22

*Cedric Kushner Promotions, Ltd. v. King*,
533 U.S. 158, 161, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001)…………………21

*Celotex Corp. v. Catrett*,
477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)…………………. 10

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
187 F.3d 229, 242 (2d Cir. 1999).....…………………………….……………21

*Crigger v. Fahnestock & Co.,*
443 F.3d 230, 234 (2d Cir.2006)..................................... ……………………23

*Dolmetta v. Uintah Nat'l Corp.,*
712 F.2d 15, 20 (2d Cir.1983)...........… …………………………….….….. 23

*Inc. Vill. of Island Park,*
888 F.Supp. 419, 432 (E.D.N.Y. 1995)..........……… … …………..……. 19

*Kaye v. Grossman,*
202 F.3d 611, 616 (2d Cir.2000)...........…………….. ………………… 23

*LiButti v. United States,*
107 F.3d 110, 121 (2d Cir.1997)................................. ……………………18, 19

*Monteleone v. Leverage Grp.*,
2008 WL 4541124, at *7 (E.D.N.Y. 2008)..............… ………………… 19

**TABLE OF AUTHORITIES ----Continued**

*Pereira v. United States,*
347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954)...........................……... 22

*Schmuck v. United States,*
489 U.S. 705, 712, 109 S.Ct. 1443, 1448, 103 L.Ed.2d 734 (1989)………. 22

*State Farm Mut. Auto. Ins. Co. v. Mallela*,
372 F.3d 500, 502 (2d Cir. 2004).............… ……… 1, 2, 8, 10, 11, 12, 13, 14, 21

*U.S. v. 4003–4005 Fifth Ave.,*.
55 F.3d 78, 83 (2d Cir. 1995)..……………….………………….................. 18

*USSC v. Suman*,
684 F.Supp.2d 378, 386 (S.D.N.Y. 2010)...........……… ……………………. 19

**STATUTES, DOCTRINE and RULES**

N.Y. Bus. Corp. Law § 1507…………………………………………….…..11

N.Y. Education Law §6530(18)…………………………………………. 12

N.Y. Public Health Law §4501.......………………… …………………. 14

8 N.Y.C.R.R. § 29.1…………………….……………..... ………. 1, 8, 10, 12

18 U.S.C. § 1962(c) ……………………………………………….…..21

Fed. R. Civ. Pro. Rule 56………………….....…………………….…….…1

N.Y.S. Dep't of Health Op. Letter ……………………………………………14

# **INTRODUCTION**

Defendants Igor Mayzenberg, Mingmen Acupuncture, P.C. ("Mingmen"), Sanli Acupuncture, P.C. ("Sanli") and Laogong Acupuncture, P.C. ("Laogong") respectfully submit this Reply Appellate Brief in further support of their appeal. The appeal arises from a Decision by the Eastern District of New York, Judge I. Leo Glasser dated 8/24/2022, and Judgment dated 9/8/22 as modified on 9/14/22, denying appellant-defendants Igor Mayzenberg ("Mayzenberg"), Mingmen Acupuncture, P.C. ("Mingmen"), Sanli Acupuncture, P.C. ("Sanli") and Laogong Acupuncture, P.C. ("Laogong") (the business entities collectively "the Professional Corporations") (all collectively, the "Mayzenberg Defendants") motion for summary judgment and granting Plaintiff-appellees Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company's (collectively "GEICO") motion for summary judgment (in part- summary judgment on the unjust enrichment claim was denied) pursuant to Fed. R. Civ. P Rule 56.

GEICO's argument relied on an alleged violation of Education Law 8 NYCRR 29.1 as a basis for asserting a *State Farm Mut. Auto. Ins. Co. v. Mallela*, 372 F.3d 500, 502 (2d Cir. 2004) claim ("*Mallela* claim"). *Mallela*, *supra*, gave no-fault insurance carriers the ability to look beyond facially valid corporate documents to deny no-fault claims where the professional corporations providing services were

1

in fact owned and controlled by laypersons. The basis for the Court of Appeals holding in *Mallela* was that lay ownership of a professional corporation violated Section 1507 of the NY Business Corporation Law which in turn rendered the PC ineligible for reimbursement under the no-fault regulations as those laypersons never could have owned the professional corporations or collected on any treatment, which was done pursuant to an improper protocol regardless of medical necessity.

GEICO's attempt to extend *Mallela's* holding to include any violation of any rule by a professional corporation is unprecedented and beyond the scope of what the Court intended by *Mallela.* As argued by GEICO, any marketing and advertising done by medical professional corporations is considered a kickback and entitles an insurance company to refuse payment to that professional corporation. In fact, by extending it to kickbacks paid for patient referrals, even if the treatment was performed by a medical provider pursuant to a case-by-case judgment and medical necessity, GEICO is simply attempting to get out of paying money for treatment its insureds properly received and escape the dictates of the New York No-Fault statutory scheme. Even if there were kickbacks, which the evidence refutes, that is not a basis for GEICO to avoid paying legitimate medical bills.

GEICO's brief is, like their opposition to the Mayzenberg Defendants' motion for summary judgment, and their own motion for summary judgment, filled with conclusory statements and advanced no evidentiary proof that they should have

prevailed on their motion for summary judgment. As they did in their Amended Complaint, discovery responses, and their own summary judgment motion, GEICO has made an evidentiary leap that Dr. Mayzenberg's payment of money for marketing and advertisement constitutes a "kickback." GEICO again focuses on the payment of money from the Mayzenberg entities to the Dovman entities instead of addressing the point of the Mayzenberg Defendants' Appeal, which is that there is no evidence of any GEICO patient being treated by any Mayzenberg PC as a result of money being paid to a Dovman entity. Even if the Court finds kickbacks are a basis to not pay for properly rendered medically necessary treatment, in this case, however, there is no evidence of any kickbacks at all and certainly not to the extent that GEICO should have prevailed as a matter of law.

Confronted with the absence of proof, GEICO instead baldly asserts that there is "overwhelming proof." Despite the fervor of this assertion, it is not backed up by any evidence other than twisting the words of Mayzenberg and attempting to create evidence through negative inference. In point of fact, the absence of evidence in their favor is such that Mayzenberg's motion for summary judgment should have been granted as a matter of law in all respects. At a minimum, the Court should have found an issue of fact as to GEICO's motion.

Mingmen treated 1390 patients covered by GEICO policies over the course of seven years at one of Mingmen's four (4) office locations. There is simply no proof

of any kind that any one of those 1390 patients were treated because of money paid by Sanli or Laogong to the Defendant Dovman entities, which Mayzenberg testified had never heard of before this suit.

In fact, the vast majority of these patients were treated prior to any GEICO payments being made in September of 2015. Thus, it was a clear error for the Court to construe the advertising and marketing payments as kickbacks as there was no factual nexus between the money paid to the entities providing those services and any of the 1390 patients treated by Mingmen. Finally, there is no evidence of a pre-existing protocol of patient treatment. All the patients received diverse types of treatment as shown in the medical records attached to the Mayzenberg Defendants' motion and there is no evidence of fraud.

For the reasons fully set forth in the Appellate brief and as set forth below, coupled with the lack of any admissible evidence that any GEICO insured was procured for a Mayzenberg PC as a result of the payment of a kickback, the Appeal should be granted, the grant of summary judgment to GEICO denied, and the Court should grant Mayzenberg's motion for summary judgment in all respects.

## **FACTS LARGELY UNDISPUTED**

The following facts are largely undisputed by any admissible evidence in GEICO's Appellee Brief or its motion papers.

Mayzenberg is a licensed acupuncturist who owns and operates the Professional Corporations. (A3135 ¶2-4). The Professional Corporations routinely treat patients who were injured in automobile accidents and seek treatment under the New York no-fault system. (3136 at ¶5).

GEICO's Amended Complaint is based entirely on two (2) theories (A2919):

(1)    The Mayzenberg Defendants billed for, and continue to seek recovery for, excessive and medically unnecessary acupuncture services, based on fabricated exams and treatment records, which were provided systematically, regardless of severity of the accident, regardless of the patient's age, and regardless of the type of injury, as part of a scheme to exploit New York's "No-Fault" insurance system; and

(2)    The Mayzenberg Defendants did not have their own stand-alone acupuncture practices, but instead operated out of a series of No-Fault "medical mills" in Brooklyn, Queens, and the Bronx. As part of the fraudulent scheme, Mayzenberg conspired with the Dovmans and others to receive a steady stream of "patients" through no effort of his

5

own, but rather through illegal fee splitting, kickback, and referral arrangements.

(A2919).

Between 2012 and 2019, the Professional Corporations treated 1390 patients eligible for coverage under GEICO policies. (A3132). Of the 1390 patients, some were treated with standard acupuncture treatment, some also received moxibustion and some received cupping. There is a wide variety in the length of treatment between the patients. Some patients were treated for 2 to 3 weeks, while some were treated for 6 months. The type of treatment and length of treatment was determined by the treating acupuncturist based on the condition and needs of the particular patient. (A3132). GEICO has not contested any of these facts but instead relies on the paper-thin conclusions of Dr. Schram, its purported expert, which cannot, as a matter of law, to try to prove GEICO's case. (A3183-3198).

GEICO also alleged in the Amended Complaint that they have conclusive proof of a vast kickback scheme orchestrated by Dr. Mayzenberg and Igor Dovman. A close review of the facts advanced by GEICO tells a vastly different story. Although GEICO asserted "overwhelming proof" of a vast kickback scheme orchestrated by Dr. Mayzenberg and Igor Dovman, GEICO has no evidence of a kickback, and the kickbacks were disputed by Mayzenberg. Similarly, GEICO does not advance any proof, in any form, to establish that any specific or group of GEICO

6

patients were treated as a result of a kickback.

Nor did they contest the following facts:

Between January 2012 and April 2017, Mingmen Acupuncture, P.C. earned gross income in the amount of $3,606.519.50. (A3075-A3133). Between January 2011 and December 2016, Sanli Acupuncture, P.C. earned gross income in the amount of $1,776,380.00. (A3067-3074; A3133). During the same period of time, the total amount of money paid to the companies alleged by GEICO to be Dovman shell companies by Sanli and Laogong was $389,182.00. (A3133, A3129-30). Of the seven (7) years Mingmen operated and treated GEICO patients, these payments only took place between the end of 2015 and the middle of 2017. (A3133, A3129). How could there have been kickbacks paid for treatment of patients years before there were any payments made?

GEICO offers no explanation as to how they could have been defrauded over a seven-year period while the alleged "kick-back" payments to Dovmans' entities only took place in an eighteen (18) month window. Again, there is a complete absence of proof as to any of this money being used as a kickback or to further any illicit referral of patients to any of the Professional Corporations. GEICO has not, and cannot, demonstrate a single GEICO patient (or any patient for that matter) that treated with one of the Professional Corporations as a result of money paid by Mayzenberg to any entity allegedly controlled by Igor Dovman.

7

After years of investigation and thousands of pages of subpoenas, GEICO can only show a series of checks written by Sanli and Laogong to various corporations. That is the entirety of their proof. Everything else advanced by GEICO is an inference or supposition inappropriate for a decision in their favor on a motion for summary judgment. One would expect to find an affidavit from a patient or some other person with first-hand knowledge as to the alleged kickback scheme, but GEICO does not point to any such person with firsthand knowledge.

Mayzenberg paid money to various companies for marketing and advertising in an effort to legally obtain patients for his practice. (A3135-A3139). Instead of actual proof to the contrary, GEICO simply concluded in its motion papers that because Mayzenberg wrote checks through Sanli to these companies, it was a kickback. GEICO surmises that this money constitutes a kickback in violation of the New York Education Law, 8 N.Y.C.R.R. § 29.1, which provides that a medical professional corporation "directly or indirectly offering [or] giving ... any fee or other consideration to or from a third party for the referral of a patient ... in the connection with the performance of professional services" is engaging in unprofessional conduct. But GEICO's attempt to expand *Mallela* should be denied, and in any event, it has no evidence that any payments were in fact kickbacks.

Mayzenberg also establishes the status of the Acupuncturists through the following uncontested facts, which GEICO failed to oppose with proof in the

underlying papers. The Acupuncturists who provided services through Mingmen and Sanli were employees and not independent contractors. (A3131-3134, ¶15-16). The Acupuncturists treated Mingmen and Sanli patients only at Mingmen and Sanli's offices. (A3131-3134). Mingmen and Sanli provided all of the equipment and supplies necessary for the Acupuncturists to treat the patients. (A3131-3134). Mingmen and Sanli controlled the employment environment, including the scheduling, charts and billing. (A3131-3134). The Acupuncturists were paid as employees, i.e., on payroll as W-2 Employees. (A3131-3134).

# ARGUMENT

## A. MAYZENBERG DEFENDANTS SHOULD HAVE BEEN GRANTED SUMMARY JUDGMENT

GEICO's inability to advance admissible proof of any GEICO patient being treated as a result of the payment of a kickback paid by Mayzenberg is enough to have warranted summary judgment in the Mayzenberg Defendants' favor and for GEICO's motion to be denied  As explained in *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. This is exactly the case here. GEICO had the burden of establishing that Mayzenberg paid a kickback for the illegal referral of a GEICO patient, treated and billed Geico for such treatment and GEICO paid the claim.

In this situation,  there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

## 1.  Kickbacks Should Not Be a Basis for Ineligibility

GEICO's reliance on a violation of Education Law 8 NYCRR 29.1 as a basis for asserting a *Mallela* claim is a novel, unprecedented and unpersuasive position. It is

10

well-settled and understood both in the Eastern District and in New York state courts that *State Farm v. Mallela, supra*, gave carriers the ability to look beyond facially valid corporate documents to deny no-fault claims where professional corporations were, in fact, owned and controlled by laypersons. The basis for the Court of Appeals holding was that lay ownership of a professional corporation violated Section 1507 of the NY Business Corporation Law which, in turn, rendered the PC ineligible for reimbursement under the no-fault regulation.

GEICO's purported extension of *Mallela* to any violation of any rule by a professional corporation is unprecedented and beyond the scope of what was intended by *Mallela*. GEICO admits in its brief that their theory "varies the classic *Mallela-Carothers*" arrangement (Appellee Brief 4) but does not properly explain how the so-called kickbacks (which never occurred) could be the same kind of control by lawpersons that occurred in *Mallela*. GEICO makes a giant leap that had alleged kickbacks not been paid, there would be no patients when there had been patients for years before any payments, and, therefore, the Mayzenberg Defendants had to do anything the Dovmans said. As established, however, even if there were kickbacks, which there were not, the vast majority of patients were seen before GEICO can even establish there were any payments to the Dovmans.

Of the seven (7) years Mingmen operated and treated GEICO patients, these payments only took place between the end of 2015 and the middle of 2017 (A3133,

A3129). GEICO offers no explanation as to how they could have been defrauded over a seven-year period while the alleged "kickback" payments to Dovmans' entities only took place in an eighteen (18) month window. In *Mallela*, to the contrary, the unlicensed laypersons were found to have actually run the entire business, and simply evaded the licensing law that did not allow them to own it. They controlled everything about the business and reaped the profits. There is no evidence of that here, and no basis for extending *Mallela* to kickbacks.[1]

GEICO cites Public Health Law §4501, Education Law §6530(18) and 8 N.Y.C.R.R. §29.1 in support of its position that kickbacks are prohibited under New York law. These statutes do not prohibit marketing and advertising, but rather prohibit the exchange of money or other consideration for the referral of a patient, i.e., exchanging money for a specific patient. First, paying money to an entity in the hopes that patient flow is generated is not an illegal act and does not constitute a kickback scheme. Paying an entity or someone to recruit a specific patient and paying for that specific referral is different and it is not the factual scenario present in this case. Furthermore, even if a kickback occurred (which did not occur here), it would not mean that every violation of any law or ethical obligation by a provider should extend to GEICO not paying its bills for its insureds.

---

[1] GEICO improperly points to a case brought by Allstate to try to bolster its case, a case which settled with no admission of wrongdoing by any party. (Appellee Brief fn. 3). It can thus have no bearing on the issues before this Court.

The ethical and business issues/violations at the heart of kickbacks do not mean that, assuming treatment was medically necessary, GEICO should not have to pay for its patients to be treated for the treatment they sought and needed. To allow them to evade the responsibility GEICO undertook when it entered the New York No-Fault market, for which it has certainly reaped a dividend given its huge market share. Regardless of any alleged kickbacks, the issue here is were the treatments medically necessary, something GEICO could have challenged by arbitration or in state court, and in many cases, did. If the treatment were medically necessary, regardless of how the patient came to the medical provider, GEICO would owe payment for its insured under the No-Fault statutory framework. If not, that framework provides a method for challenging bills on a timely matter. Paying for kickbacks, then, would be an issue for the licensing board, but have nothing to do with whether GEICO owed payment.

In this case, there is no doubt that the Professional Corporations were owned by a properly licensed medical provider and, thus, the issue in *Mallela* does not exist here- the Professional Corporations had a right to exist under New York Law, and the medical providers had a right to treat and had a right to be paid. Even if a kickback had been paid for a referral, that would not change the basic fact or the justness of GEICO paying its bills for its insureds.

Rather, if some treatment was allegedly not medically necessary, the New York No-Fault system allows GEICO to challenge that in arbitrations and litigations in state court on a case-by-case business as need be.

In fact, the Opinion Letter from the New York State Department of Health from 1988 refutes rather than supports GEICO's position. The New York DOH Opinion letter concerning PHL §4501 (Prohibition against medical referral service) clearly establishes the following:

> "Thus, there are only two means by which your client can impose a fee of some sort for a directory of physicians without violating 4501. The first would be to provide a listing of all physicians in the area covered by the directory to potential patients in exchange for a fee to be paid by each potential patient for the list, and the second would be to charge a fee to each physician who wishes to be listed (essentially an advertising fee) but make the listing available to potential patients for free." (See Document 119-32, page 2 of 4).

GEICO did not address this issue at all in their underlying papers.

Accordingly, the appeal should be granted, and Mayzenberg's motion for summary judgment granted and GEICO's motion for summary judgment denied.

## 2. There is No Evidence of Any Kickbacks in Any Event

There is no evidence in this case that the Mayzenberg Defendants ever paid a fee to anyone for patient referrals. Therefore, even if the Court agrees with the lower court that kickbacks are a *Mallela* issue, which it should not, there is simply no evidence of any kickbacks being paid here. Certainly, there is not enough evidence

that GEICO should be granted summary judgment without a jury evaluating the evidence and credibility. Unfortunately, the lower court improperly imposed itself as the fact finder in judging the Mayzenberg affidavits not credible when weighing the evidence. However, that is a job for a jury, not a judge. We contend a court could find that GEICO has not submitted evidence to meet its burden on kickbacks as a matter of law and the Mayzenberg defendants' motion for summary judgment should have been granted. However, based on the paltry record provided by GEICO, a court could never find GEICO met its burden without weighing credibility in a way that is more proper for a jury, and the lower Court improperly granted GEICO's motion.

As set forth above, between January 2012 and April 2017, Mingmen Acupuncture, P.C. earned gross income in the amount of $3,606.519.50. (A3075-A3133). Between January 2011 and December 2016, Sanli Acupuncture, P.C. earned gross income in the amount of $1,776,380.00. (A3067-3074; A3133). During the same period of time, the total amount of money paid to the companies alleged by GEICO to be Dovman shell companies by Sanli and Laogong was $389,182.00. (A3133, A3129-30). Of the seven (7) years Mingmen operated and treated GEICO patients, these payments only took place between the end of 2015 and the middle of 2017. (A3133, A3129).

Again, there is a complete absence of proof as to any of this money being used

as a kickback or to further any illicit referral of patients to any of the Professional Corporations. GEICO has not, and cannot, demonstrate a single GEICO patient (or any patient for that matter) that treated with one of the Professional Corporations as a result of money paid by Mayzenberg to any entity allegedly controlled by Igor Dovman.

GEICO is simply wrong that Mayzenberg admitted that his interrogatories conflict with his affidavit that he paid the Dovmans for marketing. (Appellee Brief 13). The portion of the interrogatories that GEICO points to as contradicting this is silent as to persons he hired to market the company. The absence of an answer to a question is not a contradiction. GEICO failed to follow up for an answer to its question as to marketing, (A1539 ¶14). Mayzenberg's affidavits, in contrast, specifically stated he paid the Dovmans for marketing, not referrals. (A3133, A3135-38). This affidavit was completely consistent with his deposition testimony. (A132, A174-175). Moreover, a reading of the transcript makes clear that, rather than saying he paid for the Dovmans to send him patients, in context what he was talking about was that paying them for advertising led to patients coming to the Professional Corporations.

> Q. How do you know whether the services that A&R Marketing resulted in a particular patient to one of your practices at those locations?
>
> A. It's like you do advertising, you know, you can lose, you can win, you never know. Sometimes you pay a huge amount of money and it

doesn't bring me anything, but my conclusion is if I get a bigger number of patients, it works for me. If it works, it works."

(A161).

Later, he states that if he pays the advertising company money that they "can recommend me to send me patients through the local community." (A404). Later he stated that when he testified the companies sent him patients what he meant was they recommended his companies for the services they provide.

> Q.   How would they send a patient to Mingmen Acupuncture?
>
> A.   They recommend them, this company, and they can say, they have specialists in this and this and this office.

(A427-28). However, paying a marketing company to advertise and recommend your companies to providers is perfectly appropriate and done by most medical providers including the major medical companies and hospitals.

Clearly, in the very sections where GEICO claims Mayzenberg is admitting to paying kickbacks, what he is talking about is advertising and how you never know if it is working per se, but if the number of patients he sees increases, then he concludes the advertising worked, which is consistent with his affidavits. He also states the advertising companies can recommend him to the medical providers they contact. At the very least, that issue of credibility of Mayzenberg, which the lower court took on, was one for the jury, not the lower court.

Accordingly, the appeal should be granted, and Mayzenberg's motion for summary judgment granted and GEICO's motion for summary judgment denied.

### 3. Non-Parties' Invocation of the Fifth Amendment Should Not Be Used to Draw a Negative Inference Against the Defendants

GEICO's motion and appellee brief inappropriately relies on non-parties' assertion of the Fifth Amendment privilege (as well as Dovmans' assertions when he was a non-party). Depending on the circumstances of a case, a non-party's invocation of the Fifth Amendment may be used to draw adverse inferences against a party in a civil case. *See LiButti v. United States,* 107 F.3d 110, 121 (2d Cir.1997).

When deciding whether such an inference is warranted, the district court should consider a variety of factors, including: (1) the nature of the relationship between the party and the non-party, (2) the degree to which the party controls the non-party, (3) the compatibility of the interests of the party and non-party in the outcome of the litigation, and (4) the role of the non-party witness in the litigation. *See LiButti* at 123. "[T]he overarching concern is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth." *LiButti* at 124. "While the strength and cogency of the adverse inference should, of course, be tested against the other evidence in the case, 'the claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation.'" *LiButti at* 124 (*quoting U.S. v. 4003–4005 Fifth Ave.,* 55 F.3d 78, 83 (2d Cir. 1995)).

"However, a motion for summary judgment cannot be granted on an adverse inference alone; rather, the inference must be weighed with other evidence in the

18

matter in determining whether genuine issues of fact exist." *USSC v. Suman,* 684 F.Supp.2d 378, 386 (S.D.N.Y. 2010); *accord Monteleone v. Leverage Grp.,* 2008 WL 4541124, at *7 (E.D.N.Y. Oct. 7, 2008); *see also Inc. Vill. of Island Park,* 888 F.Supp. 419, 432 (E.D.N.Y. 1995) (finding that the moving party "must produce independent corroborative evidence of the matters to be inferred before liability will be imposed" (internal quotation marks omitted)). "The negative inference, if any, to be drawn from the assertion of the fifth amendment does not substitute for evidence needed to meet the burden of production." *See Avirgan v. Hull*, 932 F.2d 1572, 1580 (11th Cir. 1991).

The evidence in this case demonstrates that Mayzenberg and Igor Dovman had no contact until January of 2018, during the pendency of this case. Mayzenberg has maintained that he did not even know who Igor Dovman was until GEICO subpoenaed him in this case, while GEICO maintains it was a few months earlier. Clearly, the Mayzenberg Defendants have no control over Dovman as well.

The negative inference cannot be applied to the Mayzenberg Defendants given the circumstances of this case. Mayzenberg had, and has, no control over Dovman, Feinerman or Corley. Mayzenberg received no patient referrals from the law offices of Feinerman or Corley. Mayzenberg and the witnesses were not business partners, or even associated other than through the checks being written from Mayzenberg's

professional corporation. Regardless of the inferences to be drawn, GEICO cannot rely on a negative inference as the only evidence of the payments being kickbacks.

Accordingly, the appeal should be granted, and Mayzenberg's motion for summary judgment granted and GEICO's motion for summary judgment denied.

### 4. There Was No Improper Protocol or Fraudulent Treatment

GEICO offered no factual support for their assertion that the Mayzenberg Defendants' submitted any fabricated exams and treatment records in their motion or opposition to the Mayzenberg Defendants' Motion. The affidavit/declaration of Steven Schram, their expert, did not attach a single treatment record, nor did it contain any facts which support an evidentiary finding that any GEICO patient was billed for but not actually treated. (A3183-A3198).

Dr. Schram's affidavit couched his purported findings by stating, for example, "virtually every patient with a neck complaint was noted to have pain and tenderness at the base of the neck." In fact, Dr. Schram used the word "virtually" four (4) times in the same sentence. (A3183-3198).

However, the Mayzenberg Defendants, to the contrary, attached treatment records of four (4) GEICO patients which clearly demonstrate that: (a) Dr. Schram's assertion that the examination reports were "fabricated" is false; (b) the alleged "fraudulent treatment protocol" set forth in GEICO's Amended Complaint is a fiction; and (c) services were not provided "systematically, regardless of severity of

the accident, regardless of the patient's age, and regardless of the type of injury, as part of a scheme to exploit New York's 'No-Fault' insurance system" as alleged by GEICO, but individualized. (A2832-A2917; A3131-A3134).

The attached treatment records demonstrate completely varying diagnoses, treatment plans and lengths of treatment, as shown on their face and explained by Mayzenberg. (A2832-A2917; A3138). Therefore, there was no fraudulent treatment, no RICO conspiracy and no unjust enrichment. The facts here are a great reason as well why *Malella* should not be expanded into the kickback area.

Accordingly, the appeal should be granted, and Mayzenberg's motion for summary judgment granted and GEICO's motion for summary judgment denied.

## B. GEICO's CLAIMS ARE UNSUPPORTABLE WITHOUT THE KICKBACKS OR IMPROPER PROTOCOL

### 1. Civil RICO [1962 (c) & (d)]

As set forth in the Appellate Brief, to establish a civil RICO violation under 18 U.S.C. § 1962(c), GEICO must prove that it was "injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999). As to the enterprise requirement, GEICO must "prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001). Members of the enterprise must,

among other things, share a common purpose. *See Boyle v. United States*, 556 U.S. 938, 946, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009).

In this matter, GEICO alleges a violation of the mail fraud statute. To prove a violation of the mail fraud statute, GEICO must establish the existence of a fraudulent scheme and a mailing in furtherance of the scheme. *See Schmuck v. United States,* 489 U.S. 705, 712, 109 S.Ct. 1443, 1448, 103 L.Ed.2d 734 (1989); *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954).

GEICO cannot establish any facts to constitute a scheme to defraud. As stated above, there is not one GEICO patient for which it can be said the mailing of the bill constitutes the predicate act of mail fraud based on the patient having been obtained by way of an illegal kickback. Further, many of the patients were seen by the Professional Corporations non-contemporaneously with any payments to the Dovmans. Therefore, there is no scheme to defraud and no RICO.

Accordingly, the appeal should be granted, and Mayzenberg's motion for summary judgment granted and GEICO's motion for summary judgment denied.

## 2. Common Law Fraud

In order to state a claim for fraud under New York law, a plaintiff is required to allege the following five elements: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud;

(4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co.,* 443 F.3d 230, 234 (2d Cir.2006).

Similarly, there is no basis for GEICO to make a common law fraud claim as there is no evidence of any material misrepresentation, an intent to defraud or reliance by GEICO. As such, the Court cannot conclude that the Mayzenberg Defendants defrauded GEICO out of any money as GEICO cannot demonstrate that it could have successfully withheld payment of the 1390 patients' claims (including the 2011 to 2015 claims well before the Dovmans received any payment) based on the payments made to the alleged shell companies between September

Accordingly, the appeal should be granted, and Mayzenberg's motion for summary judgment granted and GEICO's motion for summary judgment denied.

### 3. Unjust Enrichment

In order to state a claim for unjust enrichment,[2] "plaintiff must establish 1) that the defendant benefitted; 2) at plaintiff's expense; and 3) that 'equity and good conscience' require restitution." *Kaye v. Grossman,* 202 F.3d 611, 616 (2d Cir.2000) (*citing Dolmetta v. Uintah Nat'l Corp.,* 712 F.2d 15, 20 (2d Cir.1983)).

Again, there is no evidence that the Mayzenberg Defendants benefitted at GEICO's expense. Rather, they provided a medical service to GEICO insureds and

---

[2] GEICO has withdrawn this claim in light of the lower court's decision which found an issue of fact as to this matter and the granting of the rest of its motion.

were compensated, or should be compensated, for same under the New York No-Fault law.

Accordingly, the appeal should be granted, and Mayzenberg's motion for summary judgment granted and GEICO's motion for summary judgment denied.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant the Appeal, reverse the decision of the lower Court granting GEICO summary judgment and denying the Mayzenberg Defendants' Motion for Summary Judgment, and grant the Mayzenberg's motion for summary judgment as a matter of law, and order such other and further relief as it deems appropriate.

Dated: July 18, 2023
        Garden City, New York

Defendants
IGOR MAYZENBERG
SANLI ACUPUNCTURE, P.C.
MINGMEN ACUPUNCTURE, P.C.
LAOGONG ACUPUNCTURE, P.C.

By counsel,


 _Jul'Matthew J. Conroy_____
Matthew J. Conroy (MC 9014)
SCHWARTZ, CONROY, & HACK, PC
666 Old Country Road – 9th Floor
Garden City, NY 11530
(516) 745-1122

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32 (a)(7)(B) because it contains 5452 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in Times Roman 14-point font, a proportionally spaced typeface.

_ʟuʟʼMatthew J. Conroy_____

Matthew J. Conroy, Esq.

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2023, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

_/s/Matthew J. Conroy_____
Matthew J. Conroy, Esq.